In re:  FIRST STATE BANCORPORATION,                    No. 7-11-11916 JA

      Debtor.

LINDA S. BLOOM, as Chapter 7 Trustee
For First State Bancorporation,

      Plaintiff,

v.                                                    Adversary No. 13-1033 J

FEDERAL DEPOSIT INSURANCE
CORPORATION, as receiver for
First Community Bank,

      Defendant.

## **MEMORANDUM OPINION**

THIS MATTER is before the Court on the Motion to Dismiss Count II ("Motion") filed by the Federal Deposit Insurance Corporation, as receiver for First Community Bank ("FDIC-R"), by and through its attorneys of record,  Jeffrey A. Sandell and Joshua David Wayser. FDIC-R asserts that the jurisdictional bar found in 12 U.S.C. § 1821(d)(13)(D) of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. §1821 *et seq.,* applies to Plaintiff's claim to avoid First State Bancorporation's obligations under an alleged capital maintenance guaranty as a fraudulent transfer under 11 U.S.C. § 548.  FDIC-R argues further that FIRREA's statutory framework for determining the amount of the alleged capital maintenance guaranty conclusively establishes reasonably equivalent value for purposes of defeating the Chapter 7 Trustee's fraudulent transfer claim.

The Court heard oral argument on the Motion on August 9, 2013 and took the matter under advisement.  After considering counsel's arguments and relevant case law, and being

otherwise sufficiently informed, the Court finds that the jurisdictional bar found in 28 U.S.C. § 1821(d)(13)(D) does not divest this Court of subject matter jurisdiction over the Trustee's fraudulent transfer claim raised in Count II of the Complaint for Avoidance of Fraudulent Conveyance and Objection to Claim No. 9-2 ("Complaint").[1]  The Court also finds that Count II survives FDIC-R's motion to dismiss for failure to state a claim.  The Court will, therefore, deny the Motion.

## MOTION TO DISMISS STANDARDS

FDIC-R filed its Motion pursuant to Fed.R.Civ.P. 12(b)(1)(lack of subject-matter jurisdiction), and Fed.R.Civ.P. 12(b)(6)(failure to state a claim upon which relief can be granted), each made applicable to adversary proceedings by Fed.R.Bankr.P. 7012.  Motions to dismiss filed pursuant to Fed.R.Civ.P. 12(b)(1) "generally take one of two forms:  (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell,* 299 F.3d 1173, 1180 (10th Cir. 2002)(citation omitted). FDIC-R's Motion asserts a facial attack on the allegations of subject matter jurisdiction; consequently, the Court accepts as true all of the allegations in the Complaint.  *See Stuart v. Colorado Interstate Gas Co.,* 271 F.3d 1221, 1225 (10th Cir. 2001)("In reviewing a facial attack, the district court must accept the allegations in the complaint as true.")(citation omitted).

Similarly, the Court reviews a motion to dismiss for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6) by accepting all well-pleaded facts in the Complaint as true and viewing them in the light most favorable to the non-moving party.  *See*

---

[1]The Trustee consented to the bankruptcy court hearing and determining all claims in this adversary proceeding, and to entering final orders and judgments on all claims.  *See* Consent or Refusal to Consent to the Bankruptcy Court Hearing and Determining Claims – Docket No. 2.  FDIC-R consented in open court to the bankruptcy court hearing and determining all claims in this adversary proceeding and to entering final orders and judgments on all claims, subject to the FDIC-R's request for dismissal based on lack of subject matter jurisdiction.

*Alvarado v. KOB-TV, L.L.C.,* 493 F.3d 1210, 1215 (10th Cir. 2007)(stating that under Fed.R.Civ.P. 12(b)(6), the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff.")(citation and internal quotation marks omitted). To survive a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the complaint must contain enough facts to state a cause of action that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S.662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(citing *Twombly,* 550 U.S. at 556). The Court's function in deciding a motion to dismiss under Fed.R.Civ.P. 12(b)(6) is "to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.,* 336 F.3d 1194, 1201 (10th Cir. 2003)(citations and quotation marks omitted).

PROCEDURAL HISTORY AND ALLEGED FACTS[2]

First State Bancorporation ("First State" or "Debtor") operated as a holding company for its wholly owned subsidiary, First Community Bank (the "Bank"), a New Mexico-chartered member of the Federal Reserve System. The Federal Deposit Insurance Corporation ("FDIC") insured the Bank's deposits. As of March 21, 2010, the Bank's regulatory capital status fell to "undercapitalized," and the Federal Reserve Bank of Kansas City ("Federal Reserve") charged with supervising the Bank, issued a letter requiring the Bank to submit a capital restoration plan to correct the undercapitalization. In June of 2010, First State and the Bank submitted a capital restoration plan (the "Capital Restoration Plan") to the Federal Reserve and to the New Mexico

---

[2]The source of the facts contained in the Procedural History and Alleged Facts is the Complaint, and the parties' briefs, to the extent the facts contained in the parties' briefs coincided. None of the facts included in the Procedural History and Alleged Facts section of this Memorandum Opinion constitute findings by the Court.

Regulation and Licensing Department, Financial Institutions Division (the "State") outlining the actions to be taken to restore the Bank's capitalization. The Capital Restoration Plan included a signed resolution by First State's board ensuring that First State would take all actions required to implement the Capital Restoration Plan. The Bank's undercapitalization was never corrected. On January 28, 2011, the State closed the Bank. FDIC was appointed the Bank's receiver.

First State filed a voluntary petition under Chapter 7 of the Bankruptcy Code on April 27, 2011. Linda S. Bloom was appointed Chapter 7 Trustee of First State's bankruptcy estate (the "Trustee"). Neither First State nor the Trustee filed a claim with the FDIC-R as part of the administrative claims procedure established under FIRREA. FDIC-R filed a proof of claim in the Debtor's bankruptcy case asserting an unsecured priority claim of $63,821,000 based on FDIC-R's contention that the Debtor breached its capital maintenance guaranty issued in connection with the Capital Restoration Plan (the "Capital Maintenance Claim"). The Trustee filed this adversary proceeding on April 23, 2013 objecting to FDIC-R's Capital Maintenance Claim and seeking to avoid First State's obligations under the alleged capital maintenance guaranty as a fraudulent transfer. Count I of the Complaint objects to FDIC-R's Capital Maintenance Claim on five different theories. Count II of the Complaint consists of the Trustee's fraudulent transfer claim.

DISCUSSION

I.    *Whether the Court has subject matter jurisdiction over Count II*

FIRREA contains an administrative claims procedure pursuant to which the FDIC or the Resolution Trust Corporation ("RTC"), as receiver of a failed federally insured depository institution, processes claims asserted against the failed institution. *See* 12 U.S.C. § 1821(d)(3) – (13). Through this procedure, FDIC-R was required to give notice to the Bank's creditors of the

-4-

Bank's closure and the deadline for submitting a claim. *See* 12 U.S.C. § 1821(d)(3)(B).[3] If the

FDIC-R disallows the claim, or fails to take action within the required period, the claimant can

commence an action in district court to obtain a de novo adjudication of the claim, or continue an

action against the failed financial institution commenced before appointment of the receiver. *See*

12 U.S.C. § 1821(d)(6)(A).[4] However, if a claimant fails to participate in the administrative

claims procedure when required to do so, FIRREA imposes a jurisdictional bar to judicial

resolution of the claim. *See* 12 U.S.C. § 1821(d)(13)(D).[5] FDIC-R asserts that this Court lacks

subject matter jurisdiction over the Trustee's fraudulent transfer claim under FIRREA's

jurisdictional bar, which provides:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over –
>
> (i)     any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

---

[3] That section provides:
> The receiver, in any case involving the liquidation or winding up of the affairs of a closed depository institution shall—(i) promptly publish a notice to the depository institution's creditors to present their claims, together with proof, to the receiver by a date specified in the notice which shall be not less than 90 days after publication of such notice.

> 12 U.S.C. §1821(d)(3)(B)(i).

[4] That section provides:
> Before the end of the 60-day period beginning on the earlier of—
> > (i)     The end of the period described in paragraph (5)(A)(i) with respect to any claim against a depository institution or which the Corporation is receiver; or
> > (ii)     The date of any notice of disallowance of such claim pursuant to paragraph (5)(A)(i), the claimant may request administrative review of the claim in accordance with subparagraph (A) or (B) of paragraph (7) or file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district court or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim).
> 12 U.S.C. § 1821(d)(6)(A).

[5] *See also, Parker North American Corp. v. Resolution Trust Corp. (In re Parker North American Corp.),* 24 F.3d 1145, 1150 (9th Cir. 1994)(acknowledging that "[c]laimants must exhaust these administrative remedies before seeking district or bankruptcy court review.")(citations omitted); *Freeman v. FDIC,* 56 F.3d 1394, 1400 (D.C. Cir. 1995)("Section 1821(d)(13)(D) . . . acts as a jurisdictional bar to claims or actions by parties who have not exhausted their §1821(d) administrative remedies.")(citations omitted).

(ii)     any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1823(d)(13)(D).

The phrase "[e]xcept as otherwise provided" contained in this subsection refers in part to the administrative claims process set forth in 12 U.S.C. § 1821(d)(3) through (d)(13). *Colman v. Wendover Funding, Inc.,* 89 F.3d 849, 1996 WL 316460, at *3 (10th Cir. 1996)(unpublished)(citing *Nat'l Union Fire Ins. Co. of Pittsburg v. Midland Bancor,* 869 F.Supp. 880, 884 (D.Kan. 1994)).[6]

Generally, a party's failure to exhaust the administrative claims process under FIRREA bars that party's ability to assert a claim against the FDIC or RTC as receiver[7] in any other forum. *See, e.g., Marquis v. FDIC,* 965 F.2d 1148, 1151-52 (1st Cir. 1992)("FIRREA makes participation in the administrative claims review process mandatory for all parties asserting claims against failed institutions," and "where a claimant has . . . failed to initiate an administrative claim within the filing period, the claimant necessarily forfeits any right to pursue a claim against the failed institution's assets in any court.")(citations omitted); *Resolution Trust Corp. v. Midwest Fed. Sav. Bank of Minot,* 36 F.3d 785, 791 (9th Cir. 1993)(stating that "§ 1821(d)(13)(D) divests the district courts of jurisdiction over both claims and counterclaims against the RTC until the claimants have exhausted the administrative procedures created by FIRREA.")(citation omitted). The Trustee concedes that neither she nor First State presented a claim to FDIC as receiver for the Bank through the administrative claims procedure outlined in

---

[6]*See also, Sharpe v. FDIC,* 126 F.3d 1147, 1156 (9th Cir. 1997)("The 'except as otherwise provided' language refers to the provision [in §1821(d)] that allows courts jurisdiction after the administrative claims process has been completed.").
[7]Legal analysis under FIRREA with respect to the Resolution Trust Corporation ("RTC") also applies to cases involving the FDIC. *See FDIC v. Lockhaven Estates, LLC,* 918 F.Supp.2d 1209, 1234 n. 5 (D.N.M. 2012)("Although much of the FIRREA law cited refers to the RTC, because the FDIC has stepped into the RTC's role for purposes of disposing of failed financial institutions' assets, the legal analysis with respect to the RTC thus applies to the FDIC.")(citing *Rinestone v. Enter. Bank & Trust,* 2012 WL 1681986, at *6 n.2 (D.Ariz. May 15, 2012)("Any analysis with respect to the RTC is . . . applicable to the FDIC.")).

FIRREA.  The time for presenting such a claim has expired.[8]  Thus, unless an exception applies to FIRREA's administrative remedy exhaustion requirement, this Court lacks subject matter jurisdiction over the Trustee's fraudulent transfer claim against the FDIC-R.

The language of 12 U.S.C. § 1821(d)(13)(D) "appears [to be] very broad." *Homeland Stores, Inc. v. RTC,* 17 F.3d 1269, 1273 (10th Cir. 1994).  Subsection (i) applies to "claim or action for payment" and to any "action seeking a determination of rights with respect to, the assets of any depository institution for which the FDIC has been appointed receiver." 12 U.S.C. § 1821(d)(13)(D)(i).  Here, Count II of the Trustee's Complaint asserts a fraudulent transfer claim to avoid an obligation of First State to the FDIC as receiver, alleging that First State received less than a reasonably equivalent value in exchange for obligating itself to the alleged capital maintenance guaranty.  The Trustee points out that her fraudulent transfer claim does not seek a monetary recovery from FDIC-R.  As such, Count II is not a "claim or action for payment" under 12 U.S.C. § 1821(d)(13)(D).  Section 1821(d)(13)(D)(i) nevertheless may apply to bar this Court's jurisdiction over the Trustee's fraudulent transfer claim if such claim constitutes an action seeking a determination of rights with respect to an asset of the failed Bank.

(a)  *FDIC'S Capital Maintenance Claim is an Asset*

For 12 U.S.C. § 1821(d)(13)(D)(i) to apply, the claim based on the alleged capital maintenance guaranty must be an asset of the failed Bank.  The Trustee argues that if she avoids any obligation to the Bank under the alleged capital maintenance guaranty under 11 U.S.C. §

---

[8]The deadline for First State to file a claim through FIRREA's administrative claims process expired shortly after First State filed its bankruptcy petition.  Section 108(b) of the Bankruptcy Code extends unexpired deadlines imposed upon a debtor under applicable non-bankruptcy law for a period of sixty days after the petition date. *See* 11 U.S.C. § 108(b)("if applicable nonbankruptcy law . . . fixes a period within which the debtor . . . may file any . . . proof of claim . . . , or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may. . . file . . . before the later of . . . the end of such period . . .; or 60 days after the order for relief.").  The parties do not dispute that the deadline for filing claims under FIRREA's administrative claims procedure had not expired as of the date First State filed its bankruptcy petition on April 27, 2011.  The sixty-day period afforded under 11 U.S.C. § 108(b) expired on Monday, June 27, 2011.

548, there is no asset.  Accordingly, the Trustee contends that this Court must decide her claim under 11 U.S.C. § 548 in order to determine whether 12 U.S.C. § 1821(d)(13)(D) applies to divest the Court of subject matter jurisdiction.  In *All Season's Kitchen, Inc. v. FDIC (In re All Season's Kitchen, Inc.),* 145 B.R. 391 (Bankr.D.Vt. 1992), the bankruptcy court explained the scope of 12 U.S.C. § 1821(d)(13)(D) as follows:

> The plain language of the statute, as we understand it, limits our jurisdiction only if FDIC in fact has an asset.  Accordingly, we believe that the Bankruptcy Court, in the exercise of its jurisdiction to determine jurisdiction, must determine whether the FDIC in fact has an asset.

> *All Season's Kitchen,* 145 B.R. at 402-403 (citing *Purcell v. FDIC (In re Purcell),* 141 B.R. 480, 486 (Bankr.D.Vt. 1992)).

The bankruptcy court in *Scott v. RTC (In re Scott),* 157 B.R. 297 (Bankr.W.D.Tex. 1993), *op. withdrawn at the request of the parties,* 162 B.R. 1004 (Bankr.W.D.Tex. 1994), also took this approach, reasoning that because the real property at stake was not a bona fide asset of the failed bank, 12 U.S.C. § 1821(d)(13)(D) was inapplicable. *See Scott,* 157 B.R. at 313 – 315 (finding that "FIRREA's jurisdictional bar applies only to actions seeking a determination of rights with respect to *assets* of a failed depository institution not to property merely *claimed* to be an asset by the receiver.")(citation omitted)(emphasis in original)).

The Court is not persuaded by the Trustee's argument.  FIRREA does not define "asset," as that term is used in § 1821(d)(13)(D)(i).  Black's Law Dictionary defines an "asset" as "[a]n item that is owned and has value."  *Black's Law Dictionary* (9th ed. 2009).  A disputed claim, unless so frivolous that it is worthless, is an asset regardless of whether the claim ultimately is allowed.  A claim may have substantial value before the claim is litigated, even if the claim ultimately is denied.  For example, claims constitute general intangibles or commercial tort claims under the Uniform Commercial Code, which may be sold or pledged.  *See In re K-Ram,*

-8-

*Inc.,* 451 B.R. 154, 164-165 (Bankr.D.N.M. 2011)(explaining that commercial tort claims are now covered under the uniform commercial code and that an assignment of a commercial tort claim is within Article 9's scope);  N.M.S.A. 1978 § 55-9-102(42)(Rep. Pamp. 2001)(defining "general intangible" as "any personal property including things in action").  In a bankruptcy case, the holder of a disputed claim against the debtor is a creditor who must file a proof of claim.  *See* Fed.R.Bankr.P. 3003(c)(2)("Any creditor .  . whose claim . . is scheduled as disputed . . . shall file a proof of claim . . .").  Further, the debtor must include all claims that are property of the bankruptcy estate in the schedule of assets that must be filed pursuant to Fed.R.Bankr.P. 1007(b), regardless of whether the claim is disputed.  *Cf., Sender v. Simon,* 84 F.3d 1299, 1305 (10th Cir. 1996)(causes of action that belong to the debtor as of the commencement of the bankruptcy case are property of the estate)(citations omitted); *Tennyson v. Challenge Realty (In re Tennyson),* 313 B.R. 402, 406 (Bankr.W.D.Ky. 2004)(debtors must schedule pre-petition causes of action even if the claim is contingent or the debtors perceived that the action had no value to the bankruptcy estate).  In *Nat'l Union Fire Ins. Co. of Pittsburgh v. City Sav. F.S.B.,* 28 F.3d 376, 384-85 (3rd Cir. 1994), the Court found that a disputed claim under an insurance policy is an "asset," as that term is used in § 1821(d)(13)(D)(i), even if the claim ultimately is denied.  Here, based on the allegations in the Complaint itself, the Court can determine that FDIC-R's Capital Maintenance Claim is not so frivolous that it is worthless.  FDIC-R's Capital Maintenance Claim is an "asset" of the failed Bank regardless of whether the claim ultimately is allowed.

      (b)    *FIRREA'S Jurisdictional Bar Applies to Actions by Debtors Seeking to Avoid Liability as Well as to Creditor Claims*

The Trustee also contends that FIRREA's jurisdictional bar applies only to claims or actions of creditors, not to actions by debtors of a failed depository institution seeking to avoid

-9-

liability, at least when the debtor of the failed depository institution is also a debtor in a bankruptcy case. FIRREA only requires that notice of the administrative claims process and the deadline for presenting claims to the receiver be given to creditors of the failed financial institution. *See* 12 U.S.C. § 1821(d)(3)(B).[9] As a debtor of the Bank under the alleged capital maintenance guaranty, neither First State nor the Trustee were entitled to notice from FDIC-R of FIRREA's administrative claims bar date. Arguably, the scope of the jurisdictional bar for failure to present a timely claim to the receiver should parallel the right to notice of the requirement that a claim be presented. However, even though the notice requirements under FIRREA apply only to creditors of the failed financial institution, nothing in the jurisdictional bar language contained in 12 U.S.C. §1821(d)(13)(D) appears to restrict that section's application to creditors. *See Tri-State Hotels, Inc. v. FDIC,* 79 F.3d 707, 714 (8th Cir. 1996)(rejecting the contention that § 1821(d)(13)(D)'s exhaustion requirement should be limited to creditors because FIRREA only requires notice to creditors, stating that, "[w]hile the notice provisions do apply only to creditors, such limiting language is conspicuously absent in the jurisdictional bar provision."). The language of 12 U.S.C. § 1821(d)(13)(D) "bars *any* claim or action for payment from, or *any* action seeking a determination of rights with respect to the failed institution's assets,' unless administrative remedies have been exhausted." *Id.* (emphasis added by *Tri-State).*

---

[9]Section 1821(d)(3)(B) provides:
   The receiver, in any case involving the liquidation or winding up of the affairs of a closed depository institution, shall—
   (i)   promptly publish a notice to the depository institution's *creditors* to present their claims, together with proof, to the receiver by a date specified in the notice which shall be not less than 90 days after the publication of such notice; and
   (ii)  republish such notice approximately 1 month and 2 months, respectively, after the publication under clause (i).
12 U.S.C. § 1821(d)(3)(B) (emphasis added).

Other than the Tenth Circuit,[10] all circuit courts that have considered the scope of FIRREA's administrative claims process outside the bankruptcy context have rejected this debtor/creditor distinction, holding that FIRREA's administrative claims exhaustion requirement applies equally to both creditor's claims and to debtor's actions seeking a determination with respect to liability to the failed financial institution, including declaratory judgment actions. *See, Freeman v. FDIC,* 56 F.3d 1394, 1402 (D.C.Cir. 1995)(holding that "the § 1821(d) jurisdictional bar is not limited to claims by 'creditors,' but extends to all claims and actions against, and actions seeking a determination of rights with respect to, the assets of failed financial institutions for which the FDIC serves as receiver, including debtors' claims."); *Nat'l Union v. City Sav.,* 28 F.3d at 389 (finding that FIRREA's jurisdictional bar to "'any action' includes actions by debtors as well as creditors, and is not limited to actions asserting a right to payment.").[11]  This Court agrees.  The broad language in 12 U.S.C. §1821(d)(13)(D) applies equally to actions by debtors and claims of creditors of the failed financial institution.

[10]In *Homeland Stores,* the Tenth Circuit held that 12 U.S.C. § 1821(d)(13)(D) did not bar Homeland Stores' claim against the RTC despite Homeland Stores' failure to exhaust its administrative remedies by submitting a claim through FIRREA's administrative claim process because Homeland Stores' claim arose after the failed institution entered into receivership and related solely an alleged breach of contract by the RTC acting as receiver.  *Homeland Stores,* 17 F.3d at 1275-76.  In reaching this conclusion, the Tenth Circuit noted that "much of  § 1821(d) indicates that in requiring administrative review—and in the meantime forbidding federal court jurisdiction—of 'claims,' Congress had in mind creditor and related claims arising before an institution enters receivership[,]" and that certain statutory language elsewhere in FIRREA "mentions only 'creditor claims.'" *Id.* at 1274 and 1275 (quoting 12 U.S.C. § 1821(d)(10)(A).  Taken out of context, this discussion could indicate that the Tenth Circuit finds that there is a difference between creditor and debtor claims for purposes of applying FIRREA's jurisdictional bar.  However, in *Homeland,* Homeland Stores was, in fact, asserting a claim for payment of money as a *creditor* of the receivership estate.  For this reason, *Homeland* is not controlling authority for the proposition that FIRREA's administrative claim process applies only to creditor claims and not to debtor claims. *But see Nat'l Union Fire Ins. Co. of Pittsburgh v. Midland Bancor, Inc.,* 869 F.Supp. 880, 886 (D.Kan.1994)(stating that "the Tenth Circuit has concluded that only claims by creditors are meant to be jurisdictionally barred by § 1821(d)(13)(D).").  Because this Court finds that Count II is not subject to FIRREA's jurisdictional bar for reasons other than the creditor/debtor distinction, application of FIRREA's jurisdictional bar only to creditor claims or to both debtor and creditor claims does not change the result this Court reaches.

[11]Though the following circuit courts did not directly address the debtor/creditor distinction, each case found that debtors who failed to exhaust the administrative claims process could not assert their claims in district court: *Stamm v. Paul,* 121 F.3d 635 (11th Cir. 1997)(counterclaims filed by mortgagors for trespass, breach of contract and deprivation of due process were barred under 12 U.S.C. § 1821(d)(13)(D)); *Lloyd v. FDIC,* 22 F.3d 335, 337 (1st Cir. 1994)(concluding that debtor/mortgagor's suit seeking equitable reformation or cancellation of mortgage contract fell within 1821(d)(13)(D)'s jurisdictional bar); *Meliezer v. RTC,* 952 F.2d 879 (5th Cir. 1992)(debtors' negligence suit against FDIC-R subject to FIRREA's jurisdictional bar).

-11-

(c)     *The Bankruptcy Code Does Not Create an*
        *Exception to FIRREA's Jurisdictional Bar*

The Trustee urges that FIRREA's jurisdictional bar does not apply to any claims asserted

against the FDIC in bankruptcy cases, relying in part on the Ninth Circuit's decision in *Parker*

*North American Corp. v. RTC (In re Parker North American Corp.),* 24 F.3d 1145 (9th Cir.

1994). The Court disagrees.

In *Parker,* the Ninth Circuit held that "the FIRREA claims process does not apply to

actions filed in bankruptcy court to recover preferential transfers, at least where the RTC has

filed a proof of claim that exceeds the amount sought to be recovered by the debtor." *Parker,* 24

F.3d at 1155. The Ninth Circuit supported this holding on several theories: 1) that FIRREA's

jurisdictional bar applies only to claims of creditors, not to actions by debtors to avoid liability,

*id.* at 1152-53; 2) that bankruptcy courts, unlike the RTC, have specialized expertise to

determine preferential transfer claims; *id.* at 1153; 3) that FIRREA's jurisdictional bar does not

apply in actions to determine whether the RTC has an asset; *id.* at 1154; and 4) that the

jurisdictional bar does not divest a court of jurisdiction to determine affirmative defenses. *Id.* at

1155. Subsequently, in *McCarthy v. FDIC,* 348 F.3d 1075 (9th Cir. 2003), the Ninth Circuit

limited the distinction it made in *Parker* between the jurisdictional bar as applied to creditor

claims and actions by debtors to avoid liability to actions in bankruptcy cases to avoid liability to

the FDIC or RTC. *McCarthy,* 348 F.3d at 1081.

Although this Court's decision is consistent with *Parker,* the Court declines to follow

*Parker* except to the to the extent it holds that FIRREA does not divest this Court of subject

matter jurisdiction to determine defenses to a claim of the FDIC or RTC in connection with

allowing or disallowing such claim against the bankruptcy estate. As discussed above, there is

no creditor/debtor distinction for purposes of applying FIRREA's jurisdictional bar, nor is the

question of whether the FDIC or RTC has an asset a necessary predicate to determine the scope of FIRREA's jurisdictional bar. Finally, there is no bankruptcy exception to FIRREA's jurisdictional bar. It is the defensive nature of the Trustee's fraudulent transfer claim, rather than the fact that the claim is asserted in connection with a pending bankruptcy case, that makes FIRREA's jurisdictional bar inapplicable. *See In re Stewart,* 473 B.R. 612, 629 n. 13 (Bankr.W.D.Pa. 2012), *aff'd,* 2013 WL 4041963 (W.D.Pa. Aug. 8, 2013)(observing that [t]he ability of debtors to assert defenses to claims of the FDIC . . . is an essential component of why there is no 'debtor in bankruptcy' exception to the FIRREA exhaustion requirement.").

 (d) *FIRREA's Jurisdictional Bar Does Not Divest the Bankruptcy Court of Jurisdiction Over § 548 Avoidance Relief Asserted Defensively in Support of Disallowance of a Claim Against the Bankruptcy Estate*

FDIC-R filed a claim against the bankruptcy estate on October 24, 2011 asserting its Capital Maintenance Claim, and amended the claim on January 1, 2013. The Trustee commenced this adversary proceeding on April 26, 2013. The Trustee's fraudulent transfer claim asserted in Count II in the Complaint seeks no monetary recovery from FDIC-R. Rather, the Trustee seeks disallowance of the FDIC-R's claim on the ground that the obligation upon which FDIC-R's claim is based should be avoided under 11 U.S.C. § 548.

 In a bankruptcy case, a claims bar date is fixed by rule or court order. *See* Fed.R.Bankr.P. 3002 (regarding the time for filing proofs of claim in chapter 7, 12, and 13 cases); Fed.R.Bankr.P. 3003 (regarding filing proofs of claim in Chapter 11 cases, and providing that the court shall fix the deadline for filing proofs of claim). The claims bar date has the effect of barring claims against the bankruptcy estate not filed within the required time. If a claim is filed against the estate, which is accomplished by filing a proof of claim, the bankruptcy trustee may object to the claim. *See* 11 U.S.C. § 502(a)(providing that a party in interest my object to a proof of claim). Typically, the objection to a claim is resolved in a contested matter. *See*

-13-

Fed.R.Bankr.P. 9014 (contested matters). The contested matter is initiated by the creditor filing a claim and the trustee or other party in interest filing an objection to the claim. However, if the objection to the claim includes a demand for relief of a kind specified in Fed.R.Bankr.P. 7001, the objection must be asserted in an adversary proceeding. Fed.R.Bankr.P. 3007(b). Here, the Trustee commenced an adversary proceeding to object to FDIC-R's claim. Even though the Trustee initiated the adversary proceeding, she did so in response to FDIC's claim for the purpose of disallowing the claim, and is asserting her requested relief defensively.[12]

The use of 11 U.S.C. § 548 defensively to avoid the obligation upon which a claim against the bankruptcy estate is based is analogous to the defensive use of 11 U.S.C. § 502(d) in the claims adjudication process. Under that section, a creditor's claim will be disallowed if the creditor has not paid monies or turned over property recoverable by the trustee under 11 U.S.C. § 548 and other specified sections of the Bankruptcy Code. *See, e.g., In re America West Airlines, Inc.,* 217 F.3d 1161, 1167 (9th Cir. 2000)(11 U.S.C. § 502(d) may be asserted defensively); *In re Asia Global Crossing, Ltd*., 344 B.R. 247, 251 (Bankr. S.D.N.Y. 2006)(11 U.S.C. § 502(d) may be asserted as an affirmative defense); 4 *Collier on Bankruptcy* (Alan N. Resnick and Henry J. Sommer, eds.,16[th] ed.), ¶ 502.05[2][a] ("Most courts find that there is no prohibition against the trustee's asserting section 502(d) as an affirmative defense to a clam of a creditor even if the trustee's claim is time- barred or otherwise nonrecoverable."). Generally, FIRREA's jurisdictional bar does not prevent a party sued by the FDIC or the RTC from asserting affirmative defenses in response to such claim. *See, e.g., Am First Fed., Inc. v. Lake Forest*

---

[12] The Trustee has styled the § 548 relief she seeks as something different than part of her claims objection. *See* Complaint, p. 1 ("Plaintiff . . . files this Complaint . . . to avoid an alleged capital maintenance guaranty obligation . . . . However, as a threshold matter, the Trustee objects to the FDIC-R's capital maintenance claim . . . ."). Nevertheless, the Trustee in fact is asserting § 548 defensively to seek disallowance of FDIC-Rs claim in an adversary proceeding in which she objects to FDIC-R's claim. Substance, rather than labels, should control. Therefore, for purposes of deciding the Motion to Dismiss, the Court will treat the relief sought under § 548 as one of the grounds in a claim objection asserted to seek disallowance FDIC-R's claim.

-14-

*Park, Inc.,* 198 F.3d 1259, 1264 (11th Cir. 1999)(agreeing "that an affirmative defense, that is, 'a response to a plaintiff's claim which attacks the plaintiff's *legal* right to bring an action,' . . . is not subject to the administrative exhaustion requirement of Section 1821(d)(13)(D).")(quoting Black's Law Dictionary 38 (6th ed. 1991)(emphasis in original)); *RTC v. Midwest Fed. Sav. Bank of Minot,* 36 F.3d 785, 793 (9th Cir. 1993)(finding does not divest a district court of jurisdiction over an affirmative defense . . . . raised by a defendant . . . who had no independent basis for filing a claim against the RTC, even though the defendant had not exhausted the administrative procedures established by FIRREA."); *Tri-State v. FDIC,* 79 F.3d at 715 ("true affirmative defenses may still be asserted" notwithstanding FIRREA's jurisdictional bar); *RTC v. W.W. Dev. & Mgmt., Inc.,* 73 F.3d 1298, 1307 (3rd Cir. 1996)(considering whether party's petition to open judgment asserted separate claims against RTC which would be barred by § 1821(d)(13)(D) or whether it contained defenses that would not be barred). Similarly, under the circumstances present here, where the Trustee objects to the FDIC-R's claim against the estate premised on a defensive, non-monetary claim that any liability of the bankruptcy estate to FDIC-R should be avoided pursuant to 11 U.S.C. § 548, the Court finds that FIRREA does not divest the Court of subject matter jurisdiction to adjudicate the § 548 defense to FDIC-R's claim.

Finding that FIRREA's jurisdictional bar does not apply to a bankruptcy trustee's defensive use of 11 U.S.C. § 548 to avoid an obligation in response to a claim against the estate filed by the FIDC or RTC, as receiver, is consistent with the Tenth Circuit's approach in *RTC v. Love,* 36 F.3d 972 (10th Cir. 1994). In *Love,* the Tenth Circuit found that affirmative defenses seeking to defeat the RTC's claim were not barred by 12 U.S.C. § 1821(d)(13)(D) even though the defenses were not first presented through FIRREA's administrative claims process. The *Love* court found that FIRREA's notice and filing procedures "are inconsistent with an

-15-

exhaustion requirement for affirmative defenses." *Love,* 36 F.3d at 976. As a practical matter, a merely defensive response cannot be asserted until the RTC or the FDIC files a claim. *See Love,* 36 F.3d at 977 (pointing out that "[i]f the RTC has not filed its claim before the expiration of the 60 days [period within which to file a suit in district court upon disallowance by the agency], then the defendant would be barred from asserting the affirmative defense before the affirmative defense could be asserted."). Here, although the Trustee could sought have relief under 11 U.S.C. § 548 to defeat FDIC-R's Capital Maintenance Claim before FDIC-R filed its claim in the bankruptcy case, the Trustee had no reason to do so because FDIC-R's failure to timely file a claim in First State's bankruptcy case would have barred its claim without the need for the Trustee to challenge the claim under 11 U.S.C. § 548.[13]

The Court finds further support for its holding in *Parker* and *Nat'l Union v. City Savings Bank.* In *Parker*, the Ninth Circuit held that assertion of a preferential transfer claim defensively to avoid liability on a claim by the RTC against the bankruptcy estate is in substance an affirmative defense outside of FIRREA's jurisdictional bar. *Parker,* 24 F.3d at 1155.

In *City Savings Bank*, insurance companies brought a declaratory judgment action against the RTC as receiver for a failed financial institution seeking a determination that they had the right to rescind the policies. The insurance companies also asserted the same claim for rescission defensively in response to a claim filed by the RTC. The insurance companies did not submit their rescission claim through FIRREA's administrative claims process, and only one of the insurance companies received notice of FIRREA's administrative claims bar date. The Third Circuit held "that the jurisdictional bar contained in §1821(d)(13)(D) deprives the district court

---

[13]Fed.R.Bankr.P. 3002(c) fixes a bar date for creditors to file a proof of claim in a chapter 7 case. The claims bar date in First State's bankruptcy case expired on August 30, 2011 for claims of non-governmental units, and on November 28, 2011 for claims of governmental units. The Trustee commenced this adversary proceeding after the applicable bar date expired.

of jurisdiction to hear [the insurance companies'] declaratory judgment action for rescission of the insurance policies they issued, but that the jurisdictional bar does not apply to the same theory of rescission when raised as an affirmative defense." *City Sav.,* 28 F.3d at 395.

In reaching this determination, the Third Circuit found that FIRREA's jurisdictional bar applies to actions filed by *debtors* seeking to avoid liability who *do not* receive notice under FIRREA as well as to claims of *creditors* who *are* entitled to receive notice of FIRREA's administrative claims process.[14] This disparity in treatment is consistent with FIRREA's goal of efficient determination of claims against the failed institution. In addition, it does not run afoul of due process concerns. A party who does not seek payment is not forever deprived of an opportunity to be heard, but "must instead wait and see if the RTC will sue her. If it does, then she will be able to defend herself against the RTC's action at that time." *City Sav.,* 28 F.3d at 388. RTC is then relieved of having to spend time and money adjudicating a declaratory judgment action if it did not elect to sue the party wishing to obtain a declaratory relief. *Id.*

Under this approach, 12 U.S.C. § 1821(d)(13)(D) "does not create a jurisdictional bar to defenses or affirmative defenses which a party seeks to raise in defending against a claim." *Id.* at 393. This is because "a defense or an affirmative defense is neither an 'action' nor a 'claim [for payment],' but rather is a *response* to an action or a claim." *Id.*[15] This Court finds the Third Circuit's reasoning and analysis in *City Savings Bank* persuasive.[16]

---

[14] *See City Sav.,* 28 F.3d at 388 ( "it would be perfectly consistent for Congress to provide a scheme wherein a holder of a claim for payment from the assets of the failed institution would be provided an administrative remedy and *de novo* court review, while the holder of a claim not asserting a right of payment who wanted only a *declaration* of rights against the failed bank would be provided no administrative remedy or court access.").

[15] The Third Circuit defined "action" as "a lawsuit brought in a court" and "claim" as "an action asserting a right to payment." *City Sav.,* 28 F.3d at 393 (relying on Black's Law Dictionary (6th ed. 1990) and borrowing from the definition of claim in the Bankruptcy Code)(internal quotation marks omitted)).

[16] FDIC-R cited *Schoenmann v. FDIC,* 2012 WL 3834943 (N.D.Cal. 2012)(unreported), in support of its argument that a bankruptcy trustee's fraudulent transfer claims are barred unless raised through FIRREA's administrative claims process. In *Schoenmann,* the bankruptcy trustee actually filed a claim through FIRREA's administrative claims process. 2012 WL 3834943 at * 3. The *Schoenmann* court considered only whether the claims the FDIC-R

-17-

The Trustee's assertion of her objection to FDIC-R's proof of claim based on 11 U.S.C. § 548 is not an *action* seeking a determination of rights with respect to the assets of the failed Bank encompassed by FIRREA's jurisdictional bar. Rather, such assertion is a *response* to a claim filed by FDIC-R. A demand for relief seeking to avoid an obligation under 11 U.S.C. § 548 asserted as part of an objection to claim is, in substance, an affirmative defense even if the Trustee could have sought the same relief offensively in an action commenced before FDIC-R filed its proof of claim. This is true even though the Trustee objected to FDIC-R's claim by commencing an adversary proceeding.[17] Because the Trustee's fraudulent transfer claim is raised defensively in response to FDIC-R's proof of claim, is the type of claim not entitling First Bank or the Trustee to notice of FIRREA's administrative claims bar date, seeks to avoid the obligation upon which FDIC-R's claim against the bankruptcy estate is based, and does not seek to recover money from the failed depository institution, the Court finds that 12 U.S.C. §1821(d)(13)(D) does not deprive this Court of subject matter jurisdiction to adjudicate the Trustee's fraudulent transfer claim.

---

sought to dismiss for failure to exhaust administrative remedies were part of the claims described in the trustee's administrative claim, *id.* at *8; the *Schoenmann* court did not consider whether the claims fell outside the scope of FIRREA's jurisdictional bar even if not asserted through the administrative claims process.

[17]It is not entirely clear that the Trustee was required to commence an adversary proceeding to assert her defense under 11 U.S.C. § 548. Ordinarily, an objection to claim is asserted as a contested matter. *See* Fed.R.Bankr.P. 3007(a); Fed.R.Bankr.P. 9014. However, if an objection to claim includes a demand for relief of the kind specified in Fed.R.Bankr.P. 7001, such demand must be brought by adversary proceeding. Fed.R.Bankr.P. 3007(b). It is not clear that an avoidance of an obligation under 11 U.S.C. § 548 is the kind of relief specified in Fed.R.Bankr.P. 7001. For this reason, it appears that the Trustee could have asserted her defense under 11 U.S.C. § 548 through a contested matter. In any event, various courts have held that disputes that may be resolved in a contested matter may be raised in an adversary proceeding. *See, e.g., Brannan v. Wells Fargo Home Mortg., Inc. (In re Brannan),* 485 B.R. 443, 455 (Bankr.D.Ala. 2013)(finding that civil contempt action which should be brought by motion as a contested matter could be brought by adversary proceeding); *In re Van Ness,* 399 B.R. 897, 908 (Bankr.E.D.Cal. 2009)( "While it is not permissible to seek Rule 7001adversary proceeding relief as part of a Rule 9014 contested matter, the converse is not true. There is no impediment to including a contested matter issue in an adversary proceeding."); *Motichko v. Premium Asset Recovery Corp., (In re Motichko),* 395 B.R. 25, 33 (Bankr.N.D.Ohio 2008)(pointing out that an adversary proceeding provides greater procedural protection to a defendant than does a contested matter and that form should not be elevated over substance, and concluding that debtors were not required to dismiss their adversary proceeding and re-file their request for contempt as a contested motion).

-18-

II.     _Whether Count II states a claim upon which relief can be granted_

FDIC-R alternatively argues that Count II fails to state a claim upon which relief can be granted.  Count II asserts that the alleged capital maintenance guaranty obligation of First Bank is constructively fraudulent under 11 U.S.C. § 548(a)(1)(B).  That section provides, in relevant part:

> The trustee may avoid any transfer . . .  or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor  . . .  received less than a reasonably equivalent value in exchange for such transfer or obligation; and was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

11 U.S.C. § 548(a)(1)(B).

The factual allegations incorporated or set forth in Count II include:

(1)     The Bank and the Debtor were "critically undercapitalized" at the time of the alleged capital maintenance guaranty (¶ 80);"

(2)     The FDIC required First Bank to submit an acceptable Capital Restoration Plan to correct the initial undercapitalization (¶ 25);

(3)     The components of the Capital Restoration Plan included: (i) solicitation of agreement from trust preferred securities holders to retire a significant majority of that debt as a substantial discount; (ii) obtaining a commitment from a substantial third-party investor to raise capital; and (iii) obtaining a commitment via a private offering for new common equity in a certain amount (¶29);

(4)     The alleged capital maintenance guaranty was incurred within two years of the petition date (¶ 78);

(5)     At the time of the Debtor's alleged capital maintenance guarantee, the Debtor was either insolvent or became insolvent as a result of the obligation (¶ 79);

(6)     At the time of the Debtor's alleged capital maintenance guaranty, the Debtor had nearly $100 million of trust preferred securities debt, all of which was due on the petition date, such that the Debtor incurred the alleged capital maintenance guaranty with the believe that it would incur debts beyond its ability to pay as the debts matured (¶ 81);

-19-

(7) The FDIC-R filed a claim based on the alleged capital maintenance guaranty in the amount of $63,821,000 (¶ 40); and

(8) The Debtor received less than reasonably equivalent value "in exchange for the approximately $63 million priority claim obligation it allegedly incurred under the purported capital maintenance guaranty commitment" (¶ 82).

FDIC-R asserts that Count II must be dismissed for failure to state a claim, contending that First Bank received reasonably equivalent value in exchange for the alleged constructively fraudulent transfer as a matter of law. FDIC-R relies on *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) for the proposition that a bankruptcy trustee cannot avoid a pre-petition non-collusive transfer as constructively fraudulent when the transfer is statutorily-governed or mandated and completed in accordance with the applicable statute. In *BFP,* the Supreme Court held that a judicial public foreclosure sale conducted in compliance with state law conclusively established that the debtor received reasonably equivalent value in exchange for the sale of the subject property. *See, BFP,* 511 U.S. at 545 ("We deem, as the law has always deemed, that a fair and proper price, or a 'reasonably equivalent value,' for a foreclosed property, is the price in fact received at a foreclosure sale, so long as all of the requirements of the State's foreclosure law have been complied with.").[18]

FDIC-R also relies on *Kojima v. Grandote Int'l Ltd. Liab. Co. (In re Grandote Country Club Co., Ltd.)* 252 F.3d 1146 (10th Cir. 2001) and *T.F. Stone Co., Inc. v. Harper (In re T.F.*

---

[18]The Supreme Court observed that "reasonably equivalent value," as used in § 548's constructive fraud provision, does not necessarily mean fair market value. *BFP,* 511 U.S. at 537 ("fair market value cannot—or at least cannot *always*—be the benchmark" for reasonably equivalent value.)(emphasis in original). In the context of a foreclosure sale, construction of "reasonably equivalent value" should take into account the important public policy involved in the security of the titles to real estate that would be undermined by a federally created cloud on title to every piece of real estate purchased at a foreclosure sale. *Id.* at 544-545. The Supreme Court observed further that "property that *must* be sold within [the] strictures [of state-prescribed foreclosure] is simply *worth less*" *Id.* at 539 (emphasis in original). "[F]oreclosure has the effect of completely redefining the market in which the property is offered for sale; normal free-market rules of exchange are replaced by the far more restrictive rules governing forced sales . . . . [T]he only legitimate evidence of the property's value at the time it is sold is the foreclosure-sale price itself." *Id.* at 548-549.

-20-

*Stone Co., Inc.)*, 72 F.3d 466 (5th Cir. 1995). In *Grandote*, the Tenth Circuit extended *BFP's*

holding to a non-collusive tax sale of real property conducted in accordance with a state law

"requiring that tax sales take place publicly under a competitive bidding procedure." 252 F.3d at

1152. Similarly, in *Stone*, the Fifth Circuit extended *BFP* to a non-collusive tax foreclosure sale

of real property conducted in conformity with applicable state law. *Stone,* 72 F.3d at 472.

FDIC-R extrapolates the holdings of *BFP, Grandote,* and *Stone* to the alleged capital

maintenance guaranty, reasoning that because 12 U.S.C. § 1831o(e)(2)(E)(i)[19] required the

debtor to propose a capital restoration plan that included a capital maintenance guaranty, and

because 12 U.S.C. §1831o(e)(2)(E)(i) determines the amount of a capital maintenance guaranty,

such amount is conclusively presumed reasonably equivalent value under 11 U.S.C. §

548(a)(1)(B)(i). This Court declines to apply *BFP's* holding so broadly.

Even if the Court were to accept that FDIC-R and the Debtor complied with the

regulatory requirements of 12 U.S.C. § 1831o(e)(2)(E)(i) in calculating the amount of the alleged

capital maintenance guaranty, fixing the amount of the guaranty in accordance with a statutory

mandate is insufficient to conclusively establish that the Debtor received reasonably equivalent

value in exchange for the guaranty for purposes of 11 U.S.C. § 548(a)(1)(B). In *BFP*, the Court

provided guidance for application of its holding outside the foreclosure context, stating: "[Our]

conclusion does not render [11 U.S.C. § 548(a)(1)(B)(i)] superfluous, since the "reasonably

---

[19] 12 U.S.C. § 1831o(e)(2)(E)(i) provides:
   (E)  Guarantee liability limited
      (i)  In general
      The aggregate liability under subparagraph (C)(ii) of all companies having control of an insured depository
      institution shall be the lesser of--
      (I)  an amount equal to 5 percent of the institution's total assets at the time the institution became
      undercapitalized; or
      (II)  the amount which is necessary (or would have been necessary) to bring the institution into compliance
      with all capital standards applicable with respect to such institution as of the time the institution fails to
      comply with a plan under this subsection.
  12 U.S.C. §1831o(e)(2)(E)(i).

equivalent value" criterion will continue to have independent meaning (ordinarily a meaning similar to fair market value) outside the foreclosure context. . . ." *BFP,* 511 U.S. at 545.

In *BFP*, unlike here, interpretation of "reasonably equivalent value" was driven, at least in part, by the important public policy of avoiding a federally created cloud on title to real estate purchased at a public foreclosure sale. Further, market forces fixed the foreclosure sales price as the value of the transferred property, which is what the debtor *received* in exchange for the transfer. Section 548(a)(1)(B) requires a determination of whether the debtor "*received* less than a reasonably equivalent value in exchange for such transfer or obligation." (emphasis added). In the regularly conducted statutory public foreclosure sale context, the foreclosure sales price is deemed reasonably equivalent value received by the debtor in exchange for the transfer or obligation, regardless of fair market value. These same considerations apply to regularly conducted statutory public tax sales of real property. By contrast, FIRREA only fixes the amount of the capital maintenance guaranty, *i.e.*, what the Debtor is to give up; it does not fix the value of what the Debtor *received* in exchange for the guaranty.

The Court is not suggesting that FIRREA's requirements for a capital restoration plan are irrelevant to whether a debtor received less than a reasonably equivalent value in exchange for incurring a capital maintenance obligation. The Court holds that a capital maintenance guaranty obligation incurred in connection with a capital restoration plan accepted by the FDIC does not *conclusively* establish that the debtor received reasonably equivalent value in exchange for the guaranty. For example, a bank holding company may receive less than a reasonably equivalent value in exchange for incurring a capital maintenance obligation where the FDIC accepts a capital restoration plan, and is provided capital maintenance guaranty, based on unrealistic

assumptions and without a realistic prospect that the insured depository institution may succeed in restoring the institution's capital.[20]

CONCLUSION

Based on the foregoing, the Court concludes that it has subject matter jurisdiction over Count II of the Complaint. Although FIRREA's jurisdictional bar found in 12 U.S.C. § 1821(d)(13)(D) applies to creditors' claims and debtors' causes of action, whether inside or outside the bankruptcy context, it does not bar non-monetary claims to avoid liability asserted defensively in response to a claim filed by the FDIC-R against the bankruptcy estate. Thus, even though the Trustee's fraudulent transfer claim would otherwise constitute an "action seeking a determination of rights with respect to the assets" of the Bank under 12 U.S.C. § 1821(d)(13)(D) had such cause of action been filed independently of a claim asserted by the FDIC-R, the Trustee's failure to seek § 548 relief through FIRREA's administrative claim process does not prevent the Trustee from seeking such non-monetary relief defensively as part of the claims adjudication process in First Bank's bankruptcy case. In addition, compliance with the regulatory requirements of 12 U.S.C. § 1821o(e)(2)(E)(i) in calculating the amount of the alleged capital maintenance guaranty is insufficient to conclusively establish reasonably equivalent value for purposes of 11 U.S.C. § 548(a)(1)(B). Such calculation fails to assess the value that the Debtor received in return for incurring the alleged capital maintenance guaranty. Thus, FDIC-R's requests to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon

---

[20] FIRREA mandates a capital maintenance guaranty in connection with an FDIC or RTC accepted capital restoration plan. 12 U.S.C. § 1831o(e)(2)(C)(ii). The FDIC and RTC are directed not to accept a capital restoration plan unless the agency determines, among other things, that the plan is based on realistic assumptions and the financial institution is likely to succeed in restoring the institution's capital. 12 U.S.C. § 1831o(e)(2)(C)(i). If First State's alleged capital maintenance guaranty was based on unrealistic assumptions and if there was not a realistic prospect that the Bank may succeed in restoring its capital, the value to First State of providing a guaranty would have been diminished.

Case 13-01033-j    Doc 17    Filed 09/17/13    Entered 09/17/13 10:43:55 Page 23 of 24

which relief can be granted must be denied.  The Court will enter a separate order denying

FDIC'R's Motion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket:  September 17, 2013

COPY TO:

Corali Lopez-Castro
David Aaron Samole
Kozyak Tropin & Throckmorton PA
Attorneys for Plaintiff
2525 Ponce De Leon 9th Floor
Miami, FL 33134

Jeffrey A. Sandell
Federal Deposit Insurance Corporation
Attorney for Defendant
1601 Bryan St, 15th Floor
Dallas, TX 75201

Joshua David Wayser
Katten Muchin Roseman LLP
Attorney for Defendant
2029 Century Park East, Suite 2600
Los Angeles, CA  90067