In re: FIRST STATE BANCORPORATION, No. 7-11-11916 JA

      Debtor.

LINDA S. BLOOM, as Chapter 7 Trustee
for First State Bancorporation,

      Plaintiff,

           v.       Adversary No. 13-1033 J

FEDERAL DEPOSIT INSURANCE
CORPORATION, as receiver for
First Community Bank,

      Defendant.

### MEMORANDUM OPINION AND ORDER ON MOTION FOR RECONSIDERATION OF THE COURT'S SEPTEMBER 17, 2013 ORDER DENYING THE FDIC-R'S MOTION TO DISMISS COUNT II

The Chapter 7 Trustee ("Trustee") of the bankruptcy estate of First State Bancorporation ("Bancorp"), a bank holding company for First Community Bank (the "Bank") filed this adversary proceeding after the Federal Deposit Insurance Company, as receiver ("FDIC-R") for the Bank filed a proof of claim in Bancorp's bankruptcy case asserting a priority unsecured claim in the amount of $63,821,000.00. The claim is based on Bancorp's alleged commitment to maintain the capital of the Bank ("capital maintenance guaranty").[1] Count I of the Trustee's Complaint for Avoidance of Fraudulent Conveyance and Objection to Claim No. 9-2 (the "Complaint") objects to FDIC-R's claim. Count II of the Complaint seeks disallowance of the

---

[1] The Court does not determine in this Memorandum Opinion and Order whether the alleged capital maintenance guaranty constitutes a commitment to maintain the capital of the Bank for purposes of 11 U.S.C. § 507(a)(9). For ease of reference, the Court will refer to a capital maintenance guaranty instead of an alleged guaranty, and does not thereby find or suggest that there exists an enforceable guaranty. That issue is in dispute.

claim by avoiding the obligation to FDIC-R upon which its claim is based as constructively fraudulent under 11 U.S.C. § 548(a)(1)(B).[2]

FDIC-R filed a Motion to Dismiss Count II, which the Court denied in a Memorandum Opinion and Order entered September 17, 2013. *See* Docket Nos. 17 and 18. In denying the Motion to Dismiss Count II the Court held: 1) the jurisdictional bar found in § 1821(d)(13)(D) of FIRREA does not bar the Trustee's constructive fraud claim under § 548 because such claim is a non-monetary claim seeking to avoid liability asserted defensively in response to FDIC-R's proof of claim; and 2) FIRREA's regulatory requirements governing capital maintenance guarantees are insufficient to conclusively establish as a matter of law reasonably equivalent value for purposes of § 548(a)(1)(B). FDIC-R now invites the Court to revisit its decision. *See* Motion for Reconsideration of the Court's September 17, 2013 Order Denying the FDIC-R's Motion to Dismiss Count II ("Motion for Reconsideration") - Docket No. 22.

FDIC-R raises three main arguments in support of its Motion for Reconsideration: 1) the only mechanism for the Trustee to object to FDIC-R's claim based on a § 548 constructive fraud theory is § 502(d), which is unavailable under the circumstances of this case; 2) the Court misapplied the holding of *Resolution Trust Corporation v. Love,* 36 F.3d 972 (10th Cir. 1994) and its progeny; and 3) the Court should have applied the principle established by *BFP v. Resolution Trust Corporation,* 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) and *Southeast Waffles, LLC v United States Department of Treasury/Internal Revenue Service (In re Southeast Waffles, LLC),* 702 F.3d 850 (6th Cir. 2012) to conclude that compliance with FIRREA's statutory scheme establishes reasonably equivalent value as a matter of law. The Court heard

---

[2] References to § 502 or § 548 in this opinion refer to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et. seq.* References to § 1821 or § 1831o in this opinion refer to sections of the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"), 12 U.S.C. § 1821 or 12 U.S.C. § 1831o.

oral argument on the Motion for Reconsideration and took the matter under advisement. For the reasons stated below, the Court will clarify portions of its earlier ruling.

DISCUSSION

A. *Application of Fed.R.Civ.P. 54(b)*

The Court's Memorandum Opinion and order denying FDIC-R's Motion to Dismiss Count II was a non-final, interlocutory decision.[3] Consequently Fed.R.Civ.P. 59 and Fed.R.Civ.P. 60 do not apply to the Motion for Reconsideration.[4] Instead, FDIC-R requests the Court to reconsider its decision under Fed.R.Civ.P. 54(b), which provides, in relevant part:

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed.R.Civ.P. 54(b), made applicable to adversary proceedings by Fed.R.Bankr.P. 7054. Under this rule, the Court may reconsider its interlocutory order at any time before making a final determination with respect to all of the claims of all of the parties. *See Raytheon Constructors, Inc. v. ASARCO, Inc.,* 368 F.3d 1214, 1217 (10th Cir. 2003)(quoting Fed.R.Civ.P.

---

[3] *See Dababneh v. Fed. Deposit Ins. Corp.,* 971 F.2d 428, 432 n.6 (10th Cir. 1992)("A ruling denying a motion to dismiss is interlocutory and subject to revision by the district court before a final judgment is entered. Orders denying motions to dismiss are generally not immediately appealable.")(citations omitted); *John E. Burns Drilling Co. v. Central Bank of Denver,* 739 F.2d 1489, 1491 (10th Cir. 1984)("the denial of a motion to dismiss is not a 'final decision.'")(citations omitted); *Keller v. Blinder (In re Blinder, Robinson & Co., Inc.),* 135 B.R. 899, 901 (D.Colo. 1992)(finding that the bankruptcy court's denial of a motion to dismiss for lack of jurisdiction was an interlocutory order, and that, because the order did not involve a controlling question of law for which there is a substantial basis for disagreement and for which immediate appeal would not advance the final termination of the litigation, was not subject to direct, interlocutory appeal).

[4] *See Raytheon Constructors,* 368 F.3d at 1217 ("Rule 60(b) . . . only applies to final orders or judgments."); *Trujillo v. Board of Educ. of the Albuquerque Public Schools,* 212 Fed.Appx. 760, 765 (10th Cir. 2007)(in reviewing a motion for reconsideration of an interlocutory order, the court is "not bound by the stricter standards of considering a Rule 59(e) or Rule 60(b) motion."); *In re Akbari-Shahmirzadi,* 2013 WL 1099794, at *2 - *5 (Bankr.D.N.M. Mar. 15, 2013)(acknowledging that Rules 59 and 60 do not strictly apply to interlocutory orders, but observing that some courts nevertheless analyze a motion to reconsider an interlocutory order guided by the principles applicable to Rules 59 and 60)(citations omitted).

54(b)); *C & A Const. Co. v. DHC Dev.,* 501 Fed.Appx. 763, 779 (10th Cir. 2012)(declining to review an interlocutory judgment, but noting that "[t]he district court should . . . remain free to revisit its interlocutory conclusions, if necessary, at any time prior to entering final judgment." (citing Fed.R.Civ.P. 54(b)). The Court also enjoys inherent power to revise its own earlier, non-final decision. *See Been v. O.K. Indus., Inc.,* 495 F.3d 1217, 1225 (10th Cir. 2007)("[D]istrict courts generally remain free to reconsider their earlier interlocutory orders.")(citing *Harlow v. Children's Hosp.,* 432 F.3d 50, 55 (1st Cir. 2005)). Whether to grant a motion to reconsider an interlocutory order is left to the Court's sound discretion. *See* Fed.R.Civ.P. 60(b), Advisory Committee Notes accompanying the 1946 Amendment ("[i]nterlocutory judgments . . . are left subject to the complete power of the court rendering them to afford such relief from them as justice requires."); *Elephant Butte Irrigation Dist. v. United States Dep't of Interior,* 538 F.3d 1299, 1306 (10th Cir. 2008)(noting that under Rule 54(b), "'every order short of a final decree is subject to reopening at the discretion of the district judge.'")(quoting *Price v. Philpot,* 420 F.3d 1158, 1167 n.9 (10th Cir. 2005)(additional internal quotations and citation omitted)). Despite the Court's broad discretion and inherent authority to revisit its own earlier, non-final order, a motion to reconsider under Rule 54(b) does not afford the moving party an opportunity to "'rehash' old arguments." *Akbari-Shahmirzadi,* 2013 WL 1099794 at *6 (quoting *Young v. Murphy,* 161 F.R.D. 61, 62 (N.D.Ill. 1995)(additional internal quotation marks and citation omitted). To convince the Court to change its mind, the requesting party generally must raise "'facts or law of a strongly convincing nature.'" *Id.* (quoting *California v. Summer Del Caribe, Inc.,* 821 F.Supp. 574, 578 (N.D.Cal. 1993)). The Court will review the Motion for Reconsideration with these standards in mind.

> B. Section 502(d) is not the only mechanism for the Trustee to object to FDIC-R's claim on a constructive fraud theory.

FDIC-R argues that the only avenue for the Trustee to avoid an obligation based on a § 548 constructive fraud theory as defense to the allowance of a claim against the estate is through § 502(d), and that, because that Bankruptcy Code section is unavailable to the Trustee as a matter of law, her objection to the FDIC-R's proof of claim based on § 548's constructive fraud provision necessarily fails. Section 502(d) provides:

> Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of this title, unless such entity or transferee has paid the amount , or turned over any such property for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

11 U.S.C. § 502(d).

Under this section, a claim against the bankruptcy estate will be disallowed if the claimant fails to pay money or turnover property as required by a judgment avoiding a transfer under specified sections of the Bankruptcy Code.

Section 502(d) pressures creditors to return property or pay money to the estate as required by a judgment avoiding a transfer. *See In re Davis,* 889 F.2d 658, 661 (5th Cir. 1989)(observing based on the legislative history and policy that § 502(d) "is intended to have the coercive effect of insuring compliance with judicial orders."); *In re Dornier Aviation (North America), Inc.,* 320 B.R. 831, 835 (E.D.Va. 2005)(stating that § 502(d) may be viewed as "a tool for debtors to coerce creditors to comply with judicial orders to return property")(citations omitted). The pressure applied is that unless the creditor turns over the property or pays the money, the creditor's claim against the estate will be disallowed, thereby depriving the creditor of a distribution from the estate. *See In re Commercial Fin. Services, Inc.,* 322 B.R. 440, 452 (Bankr.N.D.Okla. 2003)(stating that under § 502(d), a claimant will not be allowed "the right to
-5-

participate in distribution of the estate if that claimant has property to which the estate is entitled."). A creditor's failure to return property or pay money as required by a judgment avoiding a transfer provides a trustee with a complete defense to the creditor's claim. The Court agrees that § 502(d) is not available to the Trustee because it applies only to avoidance of transfers and not to avoidance of obligations.[5] *See* 11 U.S.C. § 502(d).[6] The Trustee seeks to avoid obligations under the capital maintenance guaranty, not transfers. Even so, the Trustee may pursue her defense to FDIC'R's claim by proceeding under § 548 despite the inapplicability of §502(d).

The defensive use of a judgment under §548 avoiding an obligation is analogous to the defensive use of a fraudulent transfer judgment under § 502(d). Like § 502(d), § 548 can serve as a complete defense to a claim. Avoidance of an obligation under § 548 results in disallowance of the claim just like a failure to return property or pay money as required by a judgment avoiding a transfer results in disallowance of the claim under § 502(d). Unlike § 502(d), disallowance of a claim based on an obligation avoided under § 548 is an automatic consequence of the avoidance judgment; there is nothing a claimant could pay or turn over to the estate to change that result. Because a judgment avoiding an obligation by itself achieves the result that § 502(d) imposes when a creditor fails to turnover transferred property after the entry of a judgment, the inclusion of judgments avoiding obligations in § 502(d) would be superfluous. The omission of obligations from § 502(d) therefore has no bearing on whether an action seeking

---

[5] The Court's Memorandum Opinion does not suggest otherwise. It refers to 11 U.S.C. § 502(d) only as analogous support for the Trustee's defensive use of 11 U.S.C. § 548 to avoid Bancorp's obligation upon which FDIC-R's claim against the bankruptcy estate is based. *See* Memorandum Opinion, p. 14.

[6] *See also In re MacMenamin's Grill Ltd.,* 450 B.R. 414, 430 (Bankr.S.D.N.Y. 2011)(distinguishing "transfers" from "obligations" and recognizing that "avoidable obligations do not trigger rights under section 502(d).")(citing *In re Asia Global Crossing, Ltd.,* 333 B.R. 199, 202-204 (Bankr.S.D.N.Y. 2005)); *Asia Global Crossing,* 333 B.R. at 204 (finding that a guaranty is an "obligation" rather than a "transfer" such that there was no "basis to invoke § 502(d)").

-6-

to avoid an obligation under § 548 as constructively fraudulent may be asserted defensively in response to a claim against the estate.

In sum, the Court is not persuaded that the inapplicability of § 502(d) to avoided obligations means as a matter of law that the Trustee may not assert her § 548 action to avoid an obligation as a defense to FDIC-R's claim against the estate. If the Trustee's avoidance action under § 548 is successful, FDIC-R's claim will be disallowed.

C. *RTC v. Love does not require the Court to change its decision.*

FDIC-R next contends that the Court misapplied the Tenth Circuit's holding in *RTC v. Love,* 36 F.3d 972 (10th Cir. 1994). The Court will clarify its analysis of why *Love* does not require dismissal of Count II. In *Love,* the Resolution Trust Corporation as receiver ("RTC") filed suit against Mr. Love to collect a deficiency owed under a note following the foreclosure of collateral securing the note. Love asserted the following defenses in response to RTC's complaint: 1) RTC failed to comply with statutory foreclosure requirements; 2) estoppel; and 3) laches. The RTC asserted that these defenses were barred because Love failed to present the defenses to the RTC within the time fixed under FIRREA for filing claims against the receivership. FIRREA requires the RTC (or FDIC) to give notice to creditors of the depository institution of the time in which they may present their claims against the receiver, which shall not be less than 90 days after publication of notice. *See* 12 U.S.C. § 1821(d)(3)(B). FIRREA further provides that a court does not have jurisdiction over "any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver" unless it is presented to the receiver within the required time. *See* 12 U.S.C. § 1821(d)(13)(D)(ii).

The Tenth Circuit determined that Mr. Love's defenses to the RTC's action to collect the deficiency were affirmative defenses and held that "affirmative defenses do not require administrative exhaustion under FIRREA." *Love,* 36 F.3d at 974. The Tenth Circuit based this holding on two primary rationales.[7]

Rationale No. 1. First, the Tenth Circuit observed that FIRREA's "notice and filing procedures outlined in § 1821(d)(3)(B)[8] are inconsistent with an exhaustion requirement for affirmative defenses." *Id.* at 976. Under FIRREA, the RTC (or FDIC) is required to give notice only to creditors of the depository institution to submit their claims against the receiver within the required time. *Id.* at 977.

> Administrative exhaustion would require parties, who are not creditors and thus do not receive notice, to present all potential affirmative defenses that they may have to actions by the RTC [or FDIC] even though such actions may be unknown and unasserted. Such a requirement would be unreasonable and not likely to have been intended by Congress.
>
> *Id*.

Further, a different result would force parties to submit hypothetical affirmative defenses to a suit not yet brought against them, which Congress could not have been intended. *Id.* (citing *National Union Fire Insurance Company v. City Savings, FSB*, 28 F.3d 376 (3rd Cir. 1994) for this proposition with approval).

---

[7]*Love* also observed that FIRREA makes no reference to the term "defense," "affirmative defense," or "potential affirmative defense" to support its conclusion that FIRREA's jurisdictional bar does "not encompass affirmative defenses." *Love,* 36 F.3d at 977-978.
[8]That section provides:
    Notice requirements
        The receiver, in any case involving the liquidation or winding up of the affairs of
        a closed depository institution, shall--
            **(i)** promptly publish a notice to the depository institution's creditors to present
            their claims, together with proof, to the receiver by a date specified in the notice
            which shall be not less than 90 days after the publication of such notice; and
            **(ii)** republish such notice approximately 1 month and 2 months, respectively,
            after the publication under clause (i).
12 U.S.C. § 1821(d)(3)(B).

Rationale No. 2. Second, the Tenth Circuit reasoned that the requirements of § 1821(d)(6)(A)[9] are inconsistent with an administrative exhaustion requirement for affirmative defenses. *Love,* 36 F.3d at 977. Under that section, a claimant must file suit on a claim within 60 days after its disallowance by the agency or the claim is barred. The Tenth Circuit explained:

> If it is merely a defensive response and not the basis for independent relief, an affirmative defense cannot be asserted until the RTC's claim has been filed in the district court. If the RTC has not filed its claim before the expiration of the 60 days, then the defendant would be barred from asserting the affirmative defense before the affirmative defense could be asserted. Surely Congress would not have intended such a result.

*Id.*

As the Court previously determined in its Memorandum Opinion, the Tenth Circuit's rationale stated in *Love* is consistent with this Court's decision that FIRREA's jurisdictional bar does not apply to a bankruptcy trustee's defensive use of § 548 to avoid an obligation in response to a claim against the estate filed by FDIC-R predicated on that obligation. *See* Memorandum Opinion, p. 15. FDIC-R argues that the *Love* court limited its holding to affirmative defenses that cannot otherwise form the basis for independent relief. The inability to assert a defense as the basis for independent relief is part of *Love's* second rationale discussed above. *See Love,* 36 F.3d at 977 (observing that, "[i]f it is merely a defensive response and not the basis for

---

[9]That section provides:
> 6) Provision for agency review or judicial determination of claims
>     (A) In general
> Before the end of the 60-day period beginning on the earlier of--
>     **(i)** the end of the period described in paragraph (5)(A)(i) with respect to any claim against a depository institution for which the Corporation is receiver; or
>     **(ii)** the date of any notice of disallowance of such claim pursuant to paragraph (5)(A)(i), the claimant may request administrative review of the claim in accordance with subparagraph (A) or (B) of paragraph (7) or file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim).
> 12 U.S.C. § 1821(d)(6)(A).

independent relief, an affirmative defense cannot be asserted until the RTC's claim has been filed in the district court.").

But the Tenth Circuit's refusal to bar Mr. Love from asserting affirmative defenses was also based on its concern with forcing parties to present hypothetical affirmative defenses to a suit that has yet to be filed and that may never be filed. *See* Rationale No. 1, discussed above. That concern applies equally to the Trustee's § 548 defense to FDIC-R's claim. A bankruptcy trustee, like the Trustee here, would have no reason to file an action to avoid an obligation under a capital maintenance guaranty unless and until the receiver timely filed a claim against the bankruptcy estate based on the guaranty. If no claim based on the guaranty is filed in the bankruptcy case before the expiration of the bankruptcy claims bar date, the claim would be barred without the need for the bankruptcy trustee to assert a § 548 defense to the claim.

Further, even if the Trustee wanted to pursue her defense through the FDIC-R's administrative claims process, she was not given notice in the first instance of FIRREA's administrative claims bar date. Bancorp's bankruptcy case had yet to be filed when such notice was given. Moreover, in many bankruptcy cases FIRREA's bar date for filing claims against the receivership estate would have expired before a bank holding company files a bankruptcy case, thereby preventing assertion of § 548 defensively before the expiration of the receivership claims bar date established under FIRREA. Section 548 is a creature of the Bankruptcy Code and cannot be asserted before a bankruptcy case is commenced.

FDIC-R also cites *Fed. Deposit Ins. Corp. v. Lockhaven Estates, LLC,* 918 F.Supp.2d 1209 (D.N.M. 2012) in support of its argument that affirmative defenses that could have been asserted as independent actions are subject to FIRREA's jurisdictional bar. As a preliminary

observation, the Court notes that *Lockhaven* is not binding precedent.[10] Even if *Lockhaven* is persuasive authority, *Lockhaven* is distinguishable from the facts in this adversary proceeding. In *Lockhaven,* defendants asserted affirmative claims for monetary relief against the FDIC as offsets in an effort to reduce their net liability to the FDIC. The defendants, as creditors of the failed institution, would have been entitled to notice of the bar date for filing claims against the FDIC and would have had a reason to assert their claim in the receivership regardless of whether FDIC brought suit in federal court. They were not seeking to avoid liability on a claim of the FDIC but instead sought to reduce the amount of their net obligation to the FDIC by asserting an independent claim against the FDIC for money damages. By contrast, here the Trustee only seeks to avoid the very obligation to the FDIC-R under the capital maintenance guaranty that FDIC-R must establish to prevail on its claim against the estate. The Trustee does not seek any monetary relief or to recover any property from FDIC-R either affirmatively or as an offset, and would have no reason to seek relief against FDIC-R under § 548 if FDIC-R did not assert a claim against the Trustee.

Having carefully considered the FDIC-R's arguments, the Court has not changed its conclusion that FIRREA does not divest the Court of its subject matter jurisdiction to adjudicate

---

[10]*See Camreta v. Greene,* 131 S.Ct. 2020, 2033, n.7, 179 L.Ed.2d 1118 (2011)("'A decision of a federal district judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.'")(quoting 18 J. Moore, et al., Moore's Federal Practice § 134.02[1][d], p. 134-26 (3d ed.2011)); *Garcia v. Tyson Foods, Inc.,* 534 F.3d 1320, 1329 (10th Cir. 2008)("'[I]t is clear that there is no such thing as 'the law of the district.'")(quoting *Threadgill v. Armstrong World Indus., Inc.,* 928 F.2d 1366, 1371 (3d Cir. 1991)); *Jones v. Novastar Mortg., Inc. (In re Jones),* 298 B.R. 451, 460-61 (Bankr.D.Kan. 2003)("Because the district judges in the District of Kansas are not bound by *stare decisis* to follow one another's decisions, the bankruptcy courts are not bound by that doctrine to follow any district judge's decisions either.")(citations omitted). *See also, Kuhn v. Wagnon (In re Kuhn),* 408 B.R. 528, 535 (Bankr.D.Kan. 2009)("A bankruptcy court is not bound by decisions of the federal district court entered in appeals of bankruptcy cases, even though sitting in the same district.")(citations omitted).

the Trustee's constructive fraud claim under § 548 asserted defensively in response to FDIC-R's claim against the bankruptcy estate.

D. *FIRREA's statutory scheme does not dictate that the Court change its decision.*

FDIC-R raises two more arguments in support of its Motion for Reconsideration: 1) the Trustee's action to avoid Bancorp's obligations under the capital maintenance guaranty constitutes an impermissible collateral attack on the Board of Governors of the Federal Reserve System's ("Federal Reserve Board's") final agency decision to accept the capital restoration plan; and 2) FIRREA's statutory scheme regulating capital restoration plans and capital maintenance guaranties conclusively establishes that Bancorp received reasonably equivalent value in exchange for the capital maintenance guaranty as a matter of law. The Court will clarify its reasoning for holding that the appropriate Federal banking agency's approval of an institution's proposed capital restoration plan pursuant to §§ 1831o(e)(2)(C)(i)(II), 1831o(e)(2)(C)(ii)(I), and 1831o(e)(2)(E)(i) does not conclusively establish that a bank holding company received reasonably equivalent value in exchange for its capital maintenance guaranty.

1. The Court's consideration of reasonably equivalent value under § 548 does not constitute an impermissible collateral attack on the agency's decision to accept the proposed capital restoration plan.

The Complaint alleges that Bancorp and the Bank, both individually and on a consolidated basis, had insufficient capital; that the Bank was required to submit an acceptable capital restoration plan to correct the Bank's undercapitalization; and that Bancorp and the Bank submitted a capital restoration plan which was accepted by the Federal Reserve Board. *See* Complaint, ¶¶ 19, 20, 25, 27, and 32. The Federal Reserve Board cannot accept a capital restoration plan unless, among other things, it determines that 1) the plan "is based on realistic assumptions, and is likely to succeed in restoring the institution's capital," and 2) the bank's

holding company has "guaranteed that the institution will comply with the plan." *See* 12 U.S.C. §§ 1831o(e)(2)(C)(i)(II) and 1831o(e)(2)(C)(ii)(I).[11] The Trustee seeks to avoid Bancorp's obligation under the capital maintenance guaranty under § 548 based on a lack of reasonably equivalent value.

In its Memorandum Opinion, the Court suggested by way of example that the measure of reasonably equivalent value for Bancorp's capital maintenance guaranty could take into account whether the capital restoration plan was based on unrealistic assumptions and was without a realistic prospect that the plan may succeed in restoring the Bank's capital. *See* Memorandum Opinion at 22-23. Because FIRREA identifies these factors as criteria for the Federal Reserve Board's acceptance of a proposed capital restoration plan, FDIC-R contends that the Trustee's assertion that Bancorp did not receive reasonably equivalent value in exchange for its capital maintenance guaranty constitutes an impermissible collateral attack on the Federal Reserve Board's decision to approve the capital restoration plan. The Trustee's Response did not address this argument.

---

[11] That section provides:
   Criteria for accepting plan
   The appropriate Federal banking agency shall not accept a capital restoration plan unless the agency determines that —
   (i) the plan —
      (I) complies with subparagraph (B);
      (II) is based on realistic assumptions, and is likely to succeed in restoring the institution's capital; and
      (III) would not appreciably increase the risk (including credit risk, interest-rate risk, and other types of risk) to which the institution is exposed; and
   (ii) if the insured depository institution is undercapitalized, each company having control of the institution has —
      (I) guaranteed that the institution will comply with the plan until the institution has been adequately capitalized on average during each of 4 consecutive calendar quarters; and
      (II) provided appropriate assurances of performance.

   12 U.S.C. § 1831o(e)(2)(C).

The Court retracts that portion of its Memorandum Opinion which stated that reasonably equivalent value of a capital maintenance guaranty could be measured by the factors set forth in § 1831o(e)(2)(C)(ii). To rule on the Motion to Dismiss Count II, the Court need not have decided whether the Trustee may present evidence of these factors in her attempt to demonstrate a lack of reasonably equivalent value at trial because other additional factors affect the determination of reasonably equivalent value. Even if the Court were to assume that the collateral attack doctrine prevents the Trustee from challenging whether the capital restoration plan is based on realistic assumptions and is likely to succeed in restoring the Bank's capital, the collateral attack doctrine would not require dismissal of Count II.

When a debtor issues a guaranty of another entity's debt, "the debtor receives no 'direct' benefit from the transfer or obligation." *Tourtellot v. The Huntington Nat'l Bank (In re Renegade Holdings, Inc.),* 457 B.R. 441, 444 (Bankr.M.D.N.C. 2011)(citing *Mellon Bank, N.A. v. Metro Communications, Inc.,* 945 F.2d 636, 646 (3rd Cir. 1991)). The debtor instead receives an indirect benefit,[12] the value of which depends upon whether the expected benefit was "legitimate and reasonable" at the time the obligation was incurred,[13] and whether, based on the totality of the circumstances,[14] the benefits the debtor anticipated it would receive roughly measure up to the amount the debtor gave up. *See, In re Fruehauf Trailer Corp.,* 444 F.3d 203, 212 (3d Cir. 2006)("a court must consider whether, 'based on the circumstances that existed at

---

[12]*Id.* at 444 (observing that a parent-company's guaranty of its subsidiary's obligation creates a potential indirect benefit).

[13]*Id.* at 445 (citing *Mellon Bank, N.A. v. The Official Committee of Unsecured Creditors of R.M.I., Inc. (In re R.M.I., Inc.),* 92 F.3d 139, 152 (3d Cir. 1996)(explaining that "value" is conferred "so long as the expectation was '*legitimate and reasonable*'")).

[14] *Id.* at 446 (the court measures the benefits to the debtor as compared to the debtor's outlay of assets based on the totality of the circumstances)(citing *In re Fruehauf Trailer Corp.,* 444 F.3d 203, 214 (3d Cir. 2006)).

-14-

the time' of the transfer, it was 'legitimate and reasonable' to expect some value accruing to the debtor.")(quoting *R.M.I.,* 92 F.3d at 152).

FDIC-R asserts a claim in the amount of $63,821,000.00 under the capital maintenance guaranty. *See* Complaint, ¶¶ 30 and 37. For purposes of the Trustee's constructive fraud claim, the reasonably equivalent value determination requires the Court to compare the value of what Bancorp received in exchange for incurring obligations under the capital maintenance guaranty with what Bancorp gave up by making the guaranty. The value Bancorp received requires consideration of the value to Bancorp and its shareholders of a recapitalized Bank and the likelihood the recapitalization would occur. The Court's assessment of what Bancorp gave up requires consideration of Bancorp's financial exposure under the guaranty, the likelihood Bancorp would be called upon to pay under the guaranty, and any other relevant factors. Whether the capital restoration plan was based on realistic assumptions and was likely to succeed in restoring the Bank's capital is relevant to the reasonably equivalent determination. However, even assuming the capital restoration plan was based on realistic assumptions and was likely to succeed in restoring the Bank's capital, it does not necessarily follow that Bancorp received reasonably equivalent value in exchange for incurring obligations under the capital maintenance guaranty. Other relevant factors must also be taken in to account before the Court can determine whether the value that Bancorp gave up is comparable to the value it received. The Court need not, therefore, decide whether the Trustee may present evidence at trial regarding whether the capital restoration plan was based on realistic assumptions and likely to succeed in restoring the Bank's capital in order to decide whether the Complaint plausibly asserts that Bancorp's capital maintenance guaranty should be avoided under § 548(a)(1)(B). Accordingly, the Court will not

-15-

Case 13-01033-j    Doc 37    Filed 07/03/14    Entered 07/03/14 13:38:54 Page 15 of 20

dismiss Count II of the Complaint as an impermissible collateral attack on the Federal Reserve Board's decision to accept the capital restoration plan.

> 2. Agency approval of a capital restoration plan under FIRREA does not establish as a matter of law that Bancorp received reasonably value in exchange for its capital maintenance guaranty.

FDIC-R argues that the grant of a capital maintenance guaranty as part of a highly regulated, statutorily governed transaction conclusively establishes that Bancorp received reasonably equivalent value in exchange for the capital maintenance guaranty. In support of its position, FDIC-R relies primarily on *BFP v. RTC*, 511 U.S. 531 (1994) and its progeny, and on *In re Southeast Waffles,* 702 F.3d 850 (6th Cir. 2012). Nothing in the *BFP* or the *Southeast Waffles* decision convinces the Court that it should reverse its earlier decision.

First, the Court notes that § 1831o(e)(2)(E)(i), which fixes the amount of the aggregate liability of the bank holding company under a capital maintenance guaranty, does not conclusively establish reasonably equivalent value for purposes of 11 U.S.C. § 548. Section 548's constructive fraud provision tests the value that the debtor received in exchange for transferring property or incurring an obligation. Because § 1831o(e)(2)(E)(i) only fixed the amount of Bancorp's maximum liability under the capital maintenance guaranty (*i.e.* the maximum amount that it *gave* under the guaranty) and did not fix the value of what Bancorp *received* in exchange, § 1831o(e)(2)(E)(i) fails to conclusively establish reasonably equivalent value under § 548.

Second, *BFP* is inapplicable to the facts and circumstances implicated by the Trustee's § 548 claim in this adversary proceeding. As the Court discussed in its Memorandum Opinion, the Supreme Court narrowed the import of its holding in *BFP* by specifically pointing out that "[t]his conclusion does not render [11 U.S.C. § 548(a)(1)(B)(i)] superfluous, since the 'reasonably

equivalent value' criterion will continue to have independent meaning . . . outside the foreclosure context . . . " *BFP,* 511 U.S. at 545; Memorandum Opinion, pp. 21 – 22.  The Supreme Court held in *BFP* that a judicial public foreclosure sale conducted in compliance with state law conclusively established that the debtor received reasonably equivalent value in exchange for the sale of the subject property.  *See, BFP,* 511 U.S. at 545-46.  In the context of a judicial public foreclosure sale, reasonably equivalent value is determined by the forced sale price received at the sale.  *Id.*  In *BFP*, unlike here, interpretation of "reasonably equivalent value" was driven, at least in part, by the important public policy of avoiding a federally created cloud on title to real estate purchased at public foreclosure sales.  *Id.* at 544.  The *BFP* Court, after examining the historical interplay of fraudulent transfer law and foreclosure law over a some 400-year history, determined that it would not presume without clearer textual guidance that Bankruptcy Code's fraudulent transfer provisions were intended to radically depart from such preexisting practice and "disrupt the ancient harmony that foreclosure law and fraudulent conveyance law, those two pillars of debtor-creditor jurisprudence, have heretofore enjoyed."  *Id*. at 543.  Those considerations do not apply here.  The Court is not persuaded that it misapplied the holding of *BFP*.

In *Southeast Waffles* the Sixth Circuit determined that the debtor could not maintain a claim under § 548 or the Tennessee fraudulent transfer statute to avoid an obligation to pay a statutorily required non-compensatory tax penalty or to avoid transfers made in payment of the tax penalty on the ground that the obligation was incurred for less than reasonably equivalent value.  *Southeast Waffles,* 702 F.3d at 859.  The Sixth Circuit explained the reasoning for this conclusion:

> [N]oncompensatory penalties assessed and collected by the IRS do not fit neatly into the fraudulent transfer context. The purpose of allowing debtors to avoid

-17-

Case 13-01033-j    Doc 37    Filed 07/03/14    Entered 07/03/14 13:38:54 Page 17 of 20

> fraudulent transfers is to discourage creditors from gaining unfair advantages as a result of a debtor's insolvency and potential bankruptcy. The IRS, on the contrary, is "an involuntary creditor." *In re Haas*, 31 F.3d 1081, 1088 (11th Cir.1994). Tax penalties arise not through contractual bargaining but by operation of statute, and no value is or can be given in exchange. It would defy common sense to find that debtors could avoid such penalties when the IRS was doing only what the tax statutes require.
>
> The impact of a decision to allow avoidance of noncompensatory penalties as fraudulent transfers would be enormous. As noted by both the Bankruptcy Court and the BAP, such a decision could open a Pandora's box of litigation by debtors seeking not only to avoid all sorts of noncompensatory fines and penalties that are commonly encountered in bankruptcy cases but also to recover any prepetition payments made in satisfaction of those fines and penalties.

*Id.*

For purposes of applying fraudulent transfer statutes that permit avoidance of obligations, the Court finds that a bank holding company's guaranty of a capital restoration plan within FIRREA's statutory framework differs from a statutorily imposed tax penalty in several important respects.

First, the FDIC-R is not an involuntary creditor in the same sense as the IRS when it asserts a claim to recover a statutorily imposed tax penalty. The Federal Reserve Board decided to accept Bancorp's proposed capital restoration plan. In the context of a motion to dismiss, the Court cannot assume there is no bargaining or negotiation between the bank and its holding company and the federal regulators, or any discretion on the part of the regulators, regarding the type of capital restoration plan or guaranty that would be acceptable to the regulators.

Second, the potential that obligations incurred under a capital maintenance guaranty could be avoided in a bankruptcy case does not render the statutorily required guaranty a nullity. Unlike a taxpayer assessed with a tax penalty for which no value is or can be received by the taxpayer in exchange, it is possible to determine the value the holding company received in exchange for a capital maintenance guaranty. The value received in exchange for a guaranty is

-18-

routinely determined when a bankruptcy trustee seeks to avoid obligations under the guaranty as constructively fraudulent. A bank holding company very well may have received reasonably equivalent value in exchange for the guaranty, in which event the obligations under the guaranty will not be avoided.

Finally, subjecting guarantees of capital restoration plans accepted by federal regulators under FIRREA's statutory framework to scrutiny under applicable fraudulent transfer statutes will not likely result in excessive litigation. Unlike a tax penalty, a capital maintenance guaranty is not commonly encountered in bankruptcy cases; the potential avoidance of a capital maintenance guaranty is a specialized issue arising only when a bankruptcy case is filed by a bank holding company with a failed subsidiary financial institution regulated under FIRREA.[15]

Because the issuance of a capital maintenance guaranty is not similar in substance to a tax penalty assessment, the Court is not persuaded that the *Southeast Waffles* decision is applicable to the Trustee's § 548 claim. Under the interplay between § 548 and § 1831o(e)(2), an obligation under a capital maintenance guaranty may in appropriate circumstances be avoided for the benefit of creditors of a bank holding company in bankruptcy.

WHEREFORE, IT IS HEREBY ORDERED that the Motion for Reconsideration is DENIED.

/s/ Robert H. Jacobvitz
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: July 3, 2014

---

[15] The Court also notes that a decision to accept a capital restoration plan is, as a practical matter, not subject to the same type of appellate review as other decisions. The bank and bank holding company are not in a position to appeal a favorable decision accepting their own plan even if the decision is appealable. Creditors of the bank holding company would not even be privy to the terms of a capital restoration plan during the appeal period, and in any event likely would not have standing to appeal.

COPY TO:

**Corali Lopez-Castro**
Kozyak Tropin & Throckmorton PA
Attorney for Plaintiff
2525 Ponce De Leon 9th Floor
Miami, FL 33134

**David Aaron Samole**
Kozyak Tropin & Throckmorton PA
Attorney for Plaintiff
2525 Ponce De Leon 9th Floor
Miami, FL 33134

**Paul Thomas Musser**
Katten Muchin Rosenman LLP
Attorney for Defendant
525 W. Monroe St., Suite 1900
Chicago, IL 60661-3693

**Jeffrey A. Sandell**
Federal Deposit Insurance Corporation
1601 Bryan St, 15th Floor
Dallas, TX 75201

**Joshua David Wayser**
Katten Muchin Roseman LLP
Attorney for Defendant
2029 Century Park East, Ste 2600
Los Angeles, CA 90067